**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**COURT FILE NO. 0:19-cv-00095-NEB-ECW**

| | |
|---|---|
| Eric Sommerness and Misty Sommerness, on behalf of themselves and others similarly situated, <br><br>        Plaintiffs, <br><br> v. <br><br> Equity Experts, LLC, EquityExperts.Org, LLC, and EquityExperts.Org Midwest, LLC <br><br>       Defendant. | **AMENDED COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

## INTRODUCTION

1. Debt collector Equity Experts has turned Eric and Misty Sommernesses' $513.00 homeowners association bill into a debt of more than $2,000.00. Equity Experts did this by charging exorbitant fees for the privilege of collecting on this bill and charging these fees to the Sommernesses.

2. To add further insult, Equity Experts engaged in heavy-handed tactics in its attempts to collect this debt. It lied to the Sommernesses by falsely representing that it was foreclosing on their home and was commencing a court action against them. On top of this, it attempted to collect this debt while it was not licensed as a debt collector by the State of Minnesota.

3. These acts of Equity Experts are illegal. The Fair Debt Collections Practices Act forbids a debt collector from collecting fees that are not authorized by law or an agreement. Additionally, the Fair Debt Collections Practices Act forbids a debt

collector from making false statements in connection with collecting a debt. And, finally, the Fair Debt Collections Practices Act forbids a debt collector from collecting debts when it is not licensed to do so. Equity Experts did all of these things.

4. For its violations of the Fair Debt Collections Practices Act, Equity Experts is liable to the Sommernesses, and class members similarly situated to them, for actual damages, statutory damages, and attorney fees.

## JURISDICTION

5. Jurisdiction of this Court arises under 28 U.S.C. § 1331, pursuant to 15 U.S.C. § 1692k(d).

6. This action arises out of Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA").

7. Venue is proper in this District because the acts and transactions occurred here, Plaintiffs reside here, and Defendants conduct business here.

## PARTIES

8. Plaintiffs Eric Sommerness and Misty Sommerness are natural persons who reside in Prior Lake, Minnesota, and are "consumers" as that term is defined by 15 U.S.C. § 1692a(3).

9. Defendant Equity Experts, LLC is a Michigan limited liability company with a corporate address of 2391 Pontiac Road, Auburn Hills, Michigan, 48236, is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), and is a "collection agency" as that term is defined by Minn. Stat. § 332.31.

10.    Defendant EquityExperts.Org, LLC is a Michigan limited liability company with a
       corporate address of 2391 Pontiac Road, Auburn Hills, Michigan, 48236, is a
       "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), and is a
       "collection agency" as that term is defined by Minn. Stat. § 332.31.

11.    Defendant EquityExperts.Org Midwest, LLC is a Michigan limited liability
       company with a corporate address of 2391 Pontiac Road, Auburn Hills, Michigan,
       48236, is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), and is
       a "collection agency" as that term is defined by Minn. Stat. § 332.31.

12.    Equity Experts, LLC, EquityExperts.Org, LLC, and EquityExperts.Org Midwest,
       LLC share common ownership, management, and employees.

13.    Equity Experts, LLC, EquityExperts.Org, LLC, and EquityExperts.Org Midwest
       are jointly referred to below as "Equity Experts".

## PROCEDURAL HISTORY

14.    Plaintiffs served the Complaint in this matter on January 28, 2019.

15.    Defendant Equity Experts, LLC answered the Complaint on February 18, 2019.

16.    With this Amended Complaint, Plaintiffs amend their Complaint as a matter of
       course within 21 days of after service of a responsive pleading, as permitted by
       Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure.

## FACTS

17.    Eric and Misty Sommerness own and reside at a single-family home in Prior Lake,
       Minnesota. The home and surrounding neighborhood is part of a common interest
       community.

18.   The Wilds Homeowners Association ("The Wilds") is a homeowners association that governs the Sommernesses' common interest community. The Sommernesses pay to The Wilds quarterly dues of $141.00.

19.   In 2017, The Sommernesses fell behind on their dues to The Wilds.

20.   This association dues debt is an obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes and is therefore a "debt" as defined by 15 U.S.C. § 1692a(5).

21.   According to the declaration of The Wilds, which was recorded on July 1, 1995, if a homeowner is late on a payment, the association may charge homeowners a late fee of $15.00, interest of 8% per annum, costs, and reasonable attorneys' fees.

22.   On November 27, 2017, The Wilds sold, or otherwise transferred, the Sommernesses' debt to Equity Experts. According to The Wilds's records, the Sommernesses owed a total of $513.00 to the association at this time.

23.   Equity Experts markets itself as a "no risk" debt collector. According to its website, Equity Experts promises its clients "zero out-of-pocket costs and we assume the risk of recovery." It further "guarantees results without the up-front costs and risks associated with standard association collections." It further states that its services cost the association "[n]othing! Our costs are communicated to the debtor, so the association pays nothing out of pocket unless our services are cancelled."

24.    On or about January 15, 2018, Equity Experts sent to the Sommernesses a letter,

addressed to Misty Sommerness, in which Equity Experts communicated the

following:

> It is important that your contact our office. We are willing to work
> with you to set up payment arrangements to pay your debt, but if
> your account is not paid, if you do not agree to an acceptable
> payment plan, or we cannot reach some other mutual agreement to
> resolve this matter, the association may choose to use other means to
> enforce their legal rights to payment.
>
> On behalf of THE WILDS HOMEOWNERS ASSOCIATION, we
> want to work with you to resolve this debt now and avoid any
> additional charges to your account. You may avoid additional
> charges if you contact us within seven (7) days and make
> satisfactory arrangements. If you call, we may be able to offer a
> payment you can afford. Please contact us at (855) 321-3973 to pay
> your balance or to discuss payment arrangements.

25.    On or about February 1, 2018, Eric called Equity Experts to discuss the debt. Eric

spoke to a representative named Amber. In the call, Amber informed Eric that the

Sommernesses' balance on the association debt was $2,254.00. In response, Eric

told Amber that this amount did not seem right to him. Amber informed Eric that

the account accrues collection fees when it goes to collections and that $1,570.00

had already accrued. Eric responded that that seemed rather high, to which Amber

responded that, unfortunately, that's what Equity Experts charges in collection

fees.

26.    In the call, Amber represented to Eric that Equity Experts had "sent over law suit

paperwork to see if the association wants to take this to court for a law suit."

27.    In the call, Amber represented to Eric that he could prevent a law suit by entering into a repayment plan and that this repayment plan would require that the Sommernesses pay a monthly collection fee of $100.

28.    Eric informed Amber that he would have to talk to his wife and that he would call back.

29.    Equity Experts made false representations in this phone call. Specifically, Equity Experts represented that it had sent over law suit paperwork to see if the association wanted to take the Sommernesses to court. In fact, no such paperwork was drafted or sent to the association. And, even if it had been, it would be illegal. Equity Experts is not a law firm with attorneys licensed to practice law in Minnesota.

30.    After this call to Equity Experts, Eric contacted Associa Minnesota, who manages The Wilds Homeowners Association, and obtained a copy of the transaction report for their file showing all charges and payments. The report showed a total of $684.00 due and owing to The Wilds as of February 1, 2018.

31.    The next day, on or about February 2, 2018, Eric drove to Associa Minnesota's office in Brooklyn Park, Minnesota. He wanted to pay the outstanding balance to the association and pay ahead on the Sommernesses' dues to avoid future problems.

32.    At Associa Minnesota's office, Eric spoke with a representative named Imran. Imran informed Eric that he must contact Danielle Thompson, another Associa Minnesota representative, to discuss paying his association dues. Imran informed

him that only The Wilds's board could authorize this, and Thompson might be able to facilitate this process.

33.   On February 2, 2018, Eric Sommerness contacted Thompson by email. In the email, Eric told Associa that he and Misty wanted to get caught up on their association dues and asked if he could call her to discuss.

34.   On February 5, 2018, Thompson emailed Eric back and told him that his account has been "sent to a Collections Agency as a result of non-payment. Going forward, you will have to contact Equity Experts directly with any questions about your account." Thompson also provided the contact information for Equity Experts.

35.   That same day, Eric emailed Thompson back, and relayed his conversation with Imran, who had told him that Thompson may be able to resolve the matter.

36.   On February 7, 2018, Thompson emailed Eric back, informing him that he received incorrect information from Imran. Thompson also informed Eric that he could not directly pay the past-due dues to the association.

37.   In the email Thompson informed Eric that the Association would incur fees if it bought back the debt. Specifically, she stated:

> When an account is sent to the third party collectors, it stays with that collection agency. There are fees they charge to follow up on the debt, and the HOA is not going to buy back the debt of the owner, which includes any collection fees you have collected as a result of being turned over to collections. This would result in the HOA (essentially the other owners dues) paying a buy back fee and possible further fees for this transfer as a result of nonpayment of the dues.

38.  Around this same time, the Sommernesses received a letter from Equity Experts dated February 1, 2018. In the letter Equity Experts communicated that it had charged additional fees to the Sommernesses' account:

> In our previous letter, we advised that if you did not pay the debt or agree to an approved payment plan within seven (7) days, we would escalate our collection activities, which would result in additional charges. Since we have not received your payment or your agreement to a payment plan, we have initiated our Post Outreach Lien Enforcement process and a $650.00 collection fee has been incurred by your association, and added to your account.

39.  The letter went on to communicate that the balance due, which was originally $684.00, was now $2,098.00.

40.  On or about February 14, 2018, Eric called Equity Experts to get more information about the increasing charges on his account. He spoke to a representative named Rebecca. Rebecca informed Eric that his balance due was now $2,254.00 due to another $141.00 homeowners' dues payment and $15.00 late fee that was tacked on to his bill.

41.  Rebecca then informed Eric that he would have to speak with another representative, Amber, about the specific charges and that Amber would call him back.

42.  Eric did not receive a call back from Amber. He tried two additional times on February 14th to reach her and another two times on February 16th. None of these attempts were successful.

43.  Eric tried Equity Experts again on February 28, 2018 and spoke to a representative there. Eric told Equity Experts that he was interested in going forward with a

repayment plan. The Equity Experts representative told him that she would email him an agreement.

44.     That same day, Eric received an email from Equity Experts. The email stated "please find your payment plan agreement attached to email, please sign and return back to Equity Experts. If any questions please feel fee [sic] to call us." However, there was no attachment to the email.

45.     On March 14, 2018, Eric followed up with Equity Experts by phone to inform them that he never received the payment plan agreement. He also requested that Equity Experts send him something showing the fees that he had been charged.

46.     In response to Eric's request, Equity Experts emailed him a document dated March 14, 2018 and titled "Statement of Account".

47.     The Statement of Account was an accounting document showing charges to the Sommernesses' collection account since November 17, 2017.

48.     The Statement of Account showed that, as of March 14, 2018, Equity Experts had charged the Sommernesses $1,570.00. The statement showed that the total amount of dues and fees owed to The Wilds at this time was $684.00. The total of $2,254.00 was reduced by $141.00 due to a recent payment by the Sommernesses for their quarterly dues; therefore, the total amount claimed to be owed at this time was $2,113.00.

49.     That same day, Eric received an email from Equity Experts with a letter attached. The letter detailed a payment plan which provided that the Sommernesses would pay Equity Experts $324.00 for 12 months.

50.   The total amount of $3,888.00 that the Sommernesses were to pay through this plan included the $2,113.00 claimed to be currently outstanding, plus ongoing association dues of $141.00 per quarter, plus $100.00 per month as ongoing collection fees.

51.   This means that, of the $3,880.00 the Sommernesses were to pay over 12 months, $2,773.00 was to go to Equity Experts for their fees.

52.   After reviewing the documents from Equity Experts, Eric had questions about his account–specifically, about the amounts charged as provided on the Statement of Account. So, on March 20, 2018, Eric called Equity Experts to discuss the charges.

53.   In the call, he first spoke to a representative named Cecelia, who then transferred him to Rebecca.

54.   In the conversation, Eric first asked about the opening entry on the statement, labeled "Principal open balance", dated November 11, 2017, in the amount of $187.83.

55.   Rebecca represented to Eric that this was the original balance when his homeowners association sent his account to Equity Experts. Rebecca also told him that, in December, this balance was increased by $345.27 because the original amount provided was incorrect. So, the correct opening balance was $527.00.

56.   Eric then asked her about a charge of $350.00 showing on the statement. Rebecca represented that this for Equity Expert's "extended outreach process" and for filing a lien on behalf of his homeowners association.

57.   Eric asked her if the lien was filed with the courthouse, and Rebecca replied, "correct."

58.   Eric then asked her when the lien was filed. Rebecca responded, "the association is the one who initiates the process, we just finish it. So it would have been sent over to the county around that timeframe." She further stated that "Associa Minnesota is the one who actually filed, we prepare the paperwork, so it's something they would have filed on their own. In the State of Minnesota they have to file it on their own."

59.   Eric then asked about three $100 charges that showed on the statement, inquiring if the charges were for letters that Equity Experts sent. Rebecca replied, "that's not specifically for the letters that were sent, it's a continuation of the process of the extended outreach; but, yes, the letters would have been sent at each one of those intervals." She also stated that "there's additional things that are done in our office as far as the escalated outreach and contact regarding the account."

60.   Eric then asked what work Equity Experts does for the $100 charge. Rebecca responded that "it's different processes with our attorneys and things that are done, different scrubs that are ran, additional attempts to reach out to you via telephone. There's different things that are included in the process."

61.   Eric asked if Equity Experts has his or Misty's telephone number on file, to which Rebecca replied, "I would have to look."

62.   Eric then asked about the $650 charge on February 1, 2018. Rebecca responded that it's for "post outreach lien enforcement. At that point the documents are

prepared for the association to enforce the lien and for them to prepare to take you to court for judgment."

63.    Eric then stated that he believed that the association would not have the need to go to court because it can file a lien. Rebecca responded that "the fee would not be removed. The work has already been done by our attorneys."

64.    Eric then asked what Equity Experts would do if he entered into a payment plan and could not pay as agreed. Rebecca responded that "it would go toward a judgment, and once a judgment is obtained it would go to garnishment." Rebecca further represented that this would include garnishment of wages, bank accounts, and taxes.

65.    Equity Experts, through its representative Rebecca, made several false statements in this conversation with Eric.

66.    First, Equity Experts represented that it had prepared and filed a lien on the Sommernesses' home. This is false. An association will file a notice of assessment lien prior to foreclosing due to an assessment debt; however; public property records show that, as of March 20, 2018–the date of this phone call–no one had recorded any such notice related to association dues. In fact, as of the date of the Complaint in this case, no such notice had been recorded.

67.    Equity Experts also represented that a lien had been filed "with the courthouse." This too is false. First, liens are recorded in county property records, not with the courthouse. Second, even if Rebecca was referring to a judgment, no one had obtained a judgment against the Sommernesses related to their homeowners association dues at that point, nor had anyone filed a law suit against the

Sommerness related to their association dues at that point. In fact, as of the date of the Complaint in this case, no one had commenced such a law suit against the Sommernesses.

68.    Equity Experts also represented that Associa Minnesota is the one that actually filed the lien against the Sommernesses, because "in the State of Minnesota they have to file it on their own." This is also false. As provided above, no one has recorded anything against the Sommernesses' home related to the debt at issue, nor has anyone commenced a law suit against them. Additionally, Minnesota law does not require that Associa Minnesota undertake the act of filing a lien with the county recorder.

69.    Equity Experts also represented that the $650 charge on the Sommernesses' account was for "post-outreach enforcement" for the "association to enforce the lien and for them to take [the Sommernesses] to court." This is also false. To foreclose an assessment lien, the association must record a 'notice of assessment lien' and a 'notice of pendency of proceeding and power of attorney to foreclose lien' in the county property records. No such documents have been recorded against the Sommernesses' property. Likewise, neither Equity Experts, Associa Minnesota, nor The Wilds Homeowners Association had at this time, or since, taken any action to take the Sommernesses to court.

70.    Equity Experts also represented that the work on the lien had already been done by its attorneys. This was false. Equity Experts had not done any such work; and, it could not lawfully undertake legal work related to the enforcement of any lien on

the Sommernesses' home because Equity Experts is not a law firm with attorneys licensed to practice law in Minnesota.

71.     On June 30, 2018 Equity Experts' debt collection agency license held with the Minnesota Department of Commerce expired.

72.     On or about August 21, 2018, Equity Experts sent a collection letter to the Sommernesses, which they received shortly thereafter.

73.     In the August 21, 2018 collection letter, Equity Experts represented that "[t]his collection agency is licensed through the Minnesota Department of Commerce".

74.     This representation was false. At this time, Equity Experts was not licensed as a collection agency through the Minnesota Department of Commerce.

### Respondeat Superior Liability

75.     The acts and omissions of Defendant, and/or the other debt collectors employed as agents by Defendant who communicated with Plaintiffs were committed within the time and space limits of their agency relationship with their principal, Defendant.

76.     The acts and omissions by Defendant and/or these other debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant in collecting consumer debts.

77.     By committing these acts and omissions against Plaintiffs, Defendant and these other debt collectors were motivated to benefit their principal, Defendant.

78.     Defendant is therefore liable to Plaintiffs through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in

violation of federal law by its collection employees, including but not limited to

violations of the FDCPA, in their attempts to collect this debt from Plaintiffs.

## CLASS ACTION ALLEGATIONS

79.   Plaintiffs bring this action individually and as a class action, pursuant to Rules

23(a) and 23(b) of the Federal Rules of Civil Procedure, on behalf of the following

Classes:

   a.   All consumers in the State of Minnesota who have been charged fees by

   Equity Experts for collection of homeowners association dues when such

   fees were not authorized by contract or law.

   b.   All consumers in the State of Minnesota who have been subject to

   collection action by Equity Experts during the time it was not a licensed

   debt collector in Minnesota, beginning June 30, 2018.

80.   The Classes are so numerous that joinder of all members is impracticable.

Although the precise number of Class members is known only to Defendant, upon

information and belief, Equity Experts has charged collection fees, as set forth

herein, and taken collection action when not licensed, against hundreds of

consumers.

81.   There are questions of law and fact common to Plaintiffs and members of the

Classes. These common questions of law and fact include, but are not limited to,

the following:

   a.   Whether Equity Experts violated the FDCPA by directly charging debtors

   collection fees when this was not expressly allowed by contact or

   Minnesota law.

b.     Whether Equity Experts violated the FDCPA by taking collection action, including sending collection letters, when it was not licensed as a debt collector in the State of Minnesota.

82.    Plaintiffs' claims are typical of other Class members. Like Plaintiffs, all Class members were directly or indirectly charged significant fees by Equity Experts for its collection efforts when these fees were not charged to the debtors' homeowners association or otherwise allowed by agreement. Additionally, like Plaintiffs, all Class members were subject to collection action by Equity Experts after its debt collection license had expired–with collection action that included receipt of collection letters from Equity Experts.

83.    Plaintiffs will fairly and adequately protect the interests of the Class members and have retained counsel experienced in Fair Debt Collection Practices Act litigation and class action litigation.

84.    Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Defendant's conduct as described in this Complaint stems from common practices. Class members do not have an interest in pursuing separate individual actions against Defendant, as the amount of each Class member's individual claims is relatively small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices.

Moreover, management of this action as a class action will not present any likely

difficulties. In the interests of justice and judicial efficiency, it would be desirable

to concentrate the litigation of all Class members' claims in a single forum.

85.     Plaintiffs intend to send notice to all Class members to the extent required by Rule

23. The names and addresses of the Class members are available from Defendant's

records.

## TRIAL BY JURY

86.     Plaintiffs are entitled to and hereby respectfully demand a trial by jury on all

issues so triable. US Const. amend. 7. Fed.R.Civ.P. 38.

## LEGAL CLAIMS

### COUNT I
### VIOLATIONS OF THE FAIR DEBT COLLECTIONS PRACTICES ACT
### False, deceptive, and misleading representations
### Individual Claim by Sommernesses
### 15 U.S.C. § 1692e(2), (4), (5)

87.     Plaintiffs incorporate the above paragraphs by reference.

88.     A debt collector may not use any false, deceptive, or misleading representation or

means in connection with the collection of any debt including the false

representation of the character, amount, or legal status of any debt. 15 U.S.C. §

1692e(2).

89.     A debt collector also may not use any false, deceptive, or misleading

representation or means in connection with the collection of any debt including the

representation or implication that nonpayment of any debt will result in the

seizure, garnishment, attachment, or sale of any property or wages of any person

unless such action is lawful and the debt collector or creditor intends to take such action. 15 U.S.C. § 1692e(4).

90.   Additionally, a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt including the threat to take any action that cannot legally be taken or that is not intended to be taken. 15 U.S.C. § 1692e(5).

91.   Equity Experts made false representations representation of the character, amount, or legal status of Sommernesses' association dues debt in the phone call between Eric Sommerness and Equity Experts that took place on or about February 1, 2018, violating 15 U.S.C. § 1692e(2).

92.   Specifically, Equity Experts represented to Eric that it had sent "law suit paperwork" to the association to see if it wanted to take the Sommernesses to court. This was false.

93.   Equity Experts also made false representations of the character, amount, or legal status of Sommernesses' association dues debt in the phone call between Eric Sommerness and Equity Experts that took place on or about March 20, 2018, violating 15 U.S.C. § 1692e(2). Specifically:

   a.   Equity Experts falsely represented that it had filed a lien on the Sommernesses' home and in the courthouse.

   b.   Equity Experts falsely represented that Minnesota law requires that Associa Minnesota file the lien against the Sommernesses.

   c.   Equity Experts falsely represented that it had taken action to "enforce the lien and take [the Sommernesses] to court."

      d.     Equity Experts falsely represented that its attorneys had worked on the lien for the association debt.

94.    Equity Experts used false, deceptive, or misleading representations including the representation or implication that nonpayment of the Sommernesses' association dues debt would result in seizure, garnishment ant attachment of his property or wages when it did not intend to take such action in the March 20, 2018 phone call, violating 15 U.S.C. § 1692e(4).

95.    Specifically, Equity Experts represented that, if the Sommernesses defaulted under the payment plan, it would result in a judgment and Equity Experts would garnish the Sommernesses' bank accounts, wages, and taxes. At this time, Equity Experts had no intention to take this action.

96.    Also, in the phone call between Eric Sommerness and Equity Experts that took place on or about March 20, 2018, Equity Experts used false, deceptive, or misleading representations regarding action that cannot legally be taken or that is not intended to be taken, violating 15 U.S.C. § 1692e(5).

97.    Specifically, Equity Experts represented that it had filed a lien related to this debt and that it had filed it with the courthouse. A lien is filed with county property records, not the courthouse, and therefore this action cannot legally be taken. Additionally, this indicates that it had commenced some sort of legal proceeding against the Sommernesses, which it had not. Equity Experts also represented that its attorneys had worked on the lien; yet Equity Experts is not a law firm with attorneys licensed to practice law in Minnesota.

98.     As a result of these violations of the FDCPA, 15 U.S.C. § 1692e(2), (4), and (5),

        Plaintiffs are entitled to statutory damages in an amount up to $1,000.00 pursuant

        to 15 U.S.C. § 1692k(a)(2)(A) and reasonable attorney's fees and costs pursuant to

        15 U.S.C. § 1692k(a)(3) from Equity Experts.

**COUNT II**
**VIOLATIONS OF THE FAIR DEBT COLLECTIONS PRACTICES ACT**
**Collection of fees not authorized by contract or law**
**Class Claim**
**15 U.S.C. § 1692f(1)**

99.     Plaintiffs incorporate the above paragraphs by reference.

100.    A debt collector may not use unfair or unconscionable means to collect or attempt

        to collect any debt. This includes the collection of any amount (including any

        interest, fee, charge, or expense incidental to the principal obligation) unless such

        amount is expressly authorized by the agreement creating the debt or permitted by

        law. 15 U.S.C. § 1692f(1).

101.    Equity Experts is a "no risk" debt collector that charges its clients "zero out-of-

        pocket costs".

102.    As demonstrated in the Sommernesses' case, Equity Experts routinely attempts to

        collect from the from debtors fees in excess of those expressly authorized by the

        agreement creating the debt or permitted by law and has therefore violated the

        FDCPA, 15 U.S.C. § 1692f(1).

103.    As a result of Equity Experts' violations of 15 U.S.C. § 1692f(1), Plaintiffs are

        entitled to actual damages resulting from the illegal fees, statutory damages in an

        amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A), class members

        are entitled such amount as the court may allow for all other class members,

without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector pursuant to 15 U.S.C. § 1692k(a)(2)(B), and Plaintiffs and class members are entitled to reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from Defendant herein.

## <u>COUNT III</u>
### VIOLATIONS OF THE FAIR DEBT COLLECTIONS PRACTICES ACT
#### Collection of fee not authorized by contract or law
#### Individual Claim by Sommernesses
#### 15 U.S.C. § 1692f(1)

104.   Plaintiffs incorporate the above paragraphs by reference.

105.   A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. This includes the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. 15 U.S.C. § 1692f(1).

106.   The Wilds Homeowners Association declaration serves as the contract governing the relationship between the association and the unit owners.

107.   The declaration provides that, if a homeowner is late on a payment, the association may charge homeowners a late fee of $15.00, interest of 8% per annum, costs, and reasonable attorneys' fees.

108.   Equity Experts is a "no risk" debt collector that charges its clients "zero out-of-pocket costs".

109.   The accounting of the Wilds Homeowners Association provided to the Sommernesses from Associa Minnesota showed a total of $684.00 due and owing

to the association as of February 1, 2018 and showed no fees charged to the
Sommernesses for collection.

110.   Equity Experts attempted to collect from the Sommernesses collection fees
exceeding $2,000.

111.   As represented in the email by Danielle Thompson to Eric Sommerness, Equity
Experts charged the fees to Sommerness. The association would only incur fees if
it bought back the debt from Equity Experts.

112.   The fees charged by Equity Experts are not costs charged to the Wilds
Homeowners Association and therefore not authorized by the declaration or any
other governing documents of the association.

113.   Additionally, neither Minnesota law nor federal law provide that a debt collector
may impose its collection costs on a debtor.

114.   Equity Experts has attempted to collect a debt not authorized by an agreement or
by Minnesota law and has therefore violated the FDCPA, 15 U.S.C. § 1692f(1).

115.   As a result of Equity Experts' violations of the FDCPA, Plaintiffs are entitled to
actual damages resulting from the illegal fees, statutory damages in an amount up
to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A), and reasonable attorney's
fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from Defendant herein.

## <u>COUNT IV</u>
## VIOLATIONS OF THE FAIR DEBT COLLECTIONS PRACTICES ACT
### Collecting a debt while unlicensed
### Class Claim
### 15 U.S.C. §§ 1692e(1), (5), (10), 1692f(1)

116.   Plaintiffs incorporate the above paragraphs by reference.

117. Equity Experts attempted to collect a debt against the Sommernesses and others similarly situated after its Minnesota debt collection license had expired.

118. Specifically, Equity Experts' license expired on June 30, 2018. After this, Equity Experts took collection action against the Sommernesses and other class members including, but not necessarily limited to, sending collection letters after this date.

119. A debt collector who collects a debt while unlicensed is threatening to take action that it cannot legally take and therefore violates the FDCPA, section 1692e(5). Equity Experts has violated section 1692e(5).

120. A violation of the FDCPA, section 1692f(1), can be premised on a violation of a Minnesota statute or common law.

121. A person who carries on business as a collection agency after expiration of a license or registration is guilty of a misdemeanor. Minn. Stat. § 332.33, subd. 1. Equity Experts has therefore violated section 1692f(1).

122. After its license expired, Equity Experts continued to send written communications to consumers in Minnesota in which it represented that "[t]his collection agency is licensed through the Minnesota Department of Commerce".

123. A debt collector may not use any false, deceptive, or misleading representation in connection with collection of a debt including the false representation that the debt collector is vouched for, bonded, or affiliated with the United States or any State, 15 U.S.C. § 1692e(1). Equity Experts falsely represented that it was vouched for, or bonded by, the State of Minnesota in these communications and therefore violated section 1692e(1).

124.   A debt collector may not use any other false representation or deceptive means to collect a debt or attempt to collect a debt. 15 U.S.C. § 1692e(10). Equity Experts falsely represented that it was "licensed as collection agency through the Minnesota Department of Commerce" in these communications and therefore made false representations to collect a debt and violated section1692e(10).

125.   As a result of Equity Experts' violations of the FDCPA sections 1692e(1), (5), and (10), and 1692f(1), Plaintiffs are entitled to statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A), class members are entitled such amount as the court may allow for all other class members without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector, pursuant to 15 U.S.C. § 1692k(a)(2)(B), and Plaintiffs and class members are entitled to reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from Defendant herein.

<u>**COUNT V**</u>
**VIOLATIONS OF THE FAIR DEBT COLLECTIONS PRACTICES ACT**
**Collecting a debt while unlicensed**
**Individual Claim by Sommernesses**
**15 U.S.C. §§ 1692e(1), (5), (10), 1692f(1)**

126.   Plaintiffs incorporate the above paragraphs by reference.

127.   Equity Experts attempted to collect the homeowners association debt against the Sommernesses after its Minnesota debt collection license had expired.

128.   Specifically, Equity Experts' license expired on June 30, 2018. After this, Equity Experts took collection action against the Sommernesses including, but not necessarily limited to, sending them a collection letter on August 21, 2018.

129.   A debt collector who collects a debt while unlicensed is threatening to take action that it cannot legally take and therefore violates the FDCPA, section 1692e(5). Equity Experts has violated section 1692e(5).

130.   A violation of the FDCPA, section 1692f(1), can be premised on a violation of a Minnesota statute or common law.

131.   A person who carries on business as a collection agency after expiration of a license or registration is guilty of a misdemeanor. Minn. Stat. § 332.33, subd. 1. Equity Experts has therefore violated section 1692f(1).

132.   A debt collector may not use any false, deceptive, or misleading representation in connection with collection of a debt including the false representation that the debt collector is vouched for, bonded, or affiliated with the United States or any State, 15 U.S.C. § 1692e(1).

133.   Equity Experts falsely represented that it was vouched for, or bonded by, the State of Minnesota when, on or about August 21, 2018, Equity Experts sent a collection letter to the Sommernesses in which it represented that "[t]his collection agency is licensed through the Minnesota Department of Commerce". At this time, Equity Experts was not licensed as a collection agency through the Minnesota Department of Commerce.

134.   A debt collector may not use any other false representation or deceptive means to collect a debt or attempt to collect a debt. 15 U.S.C. § 1692e(10).

135.   Equity Experts used a false representation or deceptive means to collect the Sommernesses' debt when, in the August 21, 2018 letter, Equity represented that "[t]his collection agency is licensed through the Minnesota Department of

Commerce". At this time, Equity Experts was not licensed as a collection agency through the Minnesota Department of Commerce.

136.     As a result of Equity Experts' violations of the FDCPA sections 1692e(1), (5), (10), and 1692f(1), Plaintiffs are entitled to statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A) and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from Defendant herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully ask:

1.     That an order be entered certifying the proposed Classes under Rule 23 of the Rules of Civil Procedure and appointing Plaintiffs and their counsel to represent the Classes;

2.     That the Court enter judgment declaring that Defendants violated the Fair Debt Collections Practices Act.

3.     That the Court enter judgment against Defendants, jointly and severally, for actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

4.     That the Court enter judgment against Defendants, jointly and severally, for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) and (B); and

5.     That the Court enter judgment against Defendants, jointly and severally, for an award to class members of such amount as the Court may allow, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector pursuant to 15 U.S.C. § 1692k(a)(2)(B).

6.   That the Court enter judgment against Defendants, jointly and severally, for an

award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. §

1692k(a)(3).

7.   Any other relief deemed appropriate by the Court.


Dated: March 11, 2019                        **CHRISTENSEN LAW OFFICE PLLC**


/s/ Daniel M. Eaton
Daniel M. Eaton
Attorney for Plaintiffs
800 Washington Ave. N.
Ste. 704
Minneapolis MN 55401
Ph: (612) 823-0188
Fax: (612) 823-4777
dan@clawoffice.com